IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT A. PRICE, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-213-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Robert A. Price filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Price applied for disability insurance and SSI benefits in August 2004, alleging disability commencing May 27, 2004. (Tr. 62, 311). He is insured for purposes of disability insurance benefits through December 31, 2009. (Tr. 17, 67).

After the Social Security Administration denied his applications for benefits both initially and on reconsideration, Price requested a hearing before an administrative law judge (the "ALJ"). ALJ Larry C. Marcy held a hearing on June 6, 2006, in Fort Worth, Texas, which Price attended with counsel. (Tr. 332-48). On July 27, 2006, the ALJ issued a decision that Price was not disabled and was not entitled to disability or SSI benefits because he was capable of a full range of sedentary work activity.[1] (Tr. 15). The Appeals Council denied Price's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§ 404.1567(a), 416.967(a).

C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

    1. Whether the ALJ gave appropriate consideration to a treating source's opinions?

    2. Whether the ALJ's determination that Price can perform a full range of sedentary work is supported by substantial evidence.

D. ADMINISTRATIVE RECORD

    1. Treatment History

Price was admitted to North Hills Hospital on June 1, 2004, with a five day history of fever, skin lesions, and an elevated white blood cell count. (Tr. 110-83). He was found to be suffering from a methicillin-resistant Staphylococcus aureus ("MRSA") infection of the left thigh. Orthopedic surgeon Bernard Crowell, M.D., operated on June 12, 2004, to explore, debride, and irrigate the infected site. He advised Price that he was at risk for losing muscle strength in his thigh because the infection involved a significant portion of muscle mass. (Tr. 117). The surgical exploration revealed a deep abscess extending to the bone with necrosis. (Tr. 125-127). A sponge was implanted to collect pus and fluid. (Tr. 111, 125-27). Crowell performed a second and then third procedure over the following week to irrigate and debride more necrotic tissue. (Tr. 121-124). Price was also treated with intravenous antibiotics. (Tr. 110-11).

While hospitalized, Price was diagnosed with uncontrolled diabetes mellitus, type II, with

Findings, Conclusions and Recommendation
Of the United States Magistrate Judge–Page 4 of 16

elevated glucose levels over 300. He was started on oral diabetic medications, which brought his blood sugar under control by the time he was discharged on June 25, 2004. (Tr. 111). His physicians also ordered cardiac testing because Price's illness put him at risk for endocarditis. (Tr. 113). The tests showed no endocarditis, but an echocardiogram performed the day after his admission showed moderately to severely diminished left ventricular function with an overall ejection fraction of 35-40%,[2] which was suggestive of coronary disease. (Tr. 149). A second echocardiogram report from June 7, 2004 confirmed mild global hypokinesis[3] of the left ventricle, with an overall ejection fraction of 45-50%, and mitral valve prolapse with mild mitral regurgitation. (Tr. 147-48). After physical rehabilitation for the extensive surgeries on his leg, Price was discharged on June 25, 2004.

At a follow-up visit with Crowell on July 27, 2004, Price was happy with his progress, but reported some pain, burning, and tingling in his left thigh. He had problems with his balance and was unable to climb stairs. (Tr. 191-92). Crowell observed that Price had difficulty walking due to weakness in his left quadricep and walked with a mild limp. Price was able to flex and extend his leg with little difficulty. (Tr. 191). By August 19, 2004, Crowell noted improvement in the wound, but instructed Price to continue physical therapy and wet-to-dry dressing changes. (Tr. 187). Price saw a second orthopedic surgeon, Bruce Prager, M.D., in September 2004 for re-evaluation. Prager noted a 2-centimeter by 4-centimeter open wound in the lateral aspect of Price's left thigh,

---

[2] Ejection fraction is the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole, and is often expressed as a percentage. It is normally sixty-five percent (plus or minus eight percent), and lower values indicate ventricular dysfunction. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 751 (31ST ed. 2007).

[3] Hypokinesis refers to abnormally decreased motor function or activity. *Id*. at 915.

and referred Price to a wound care clinic. (Tr. 185).

Price initiated treatment with family practice physician Bill Puryear, D.O, on September 16, 2004. (Tr. 217-218). Puryear ordered magnetic resonance imaging (an MRI) of Price's left femur on September 22, 2004. The MRI scan showed significant improvement and the previous left thigh abscess was no longer visualized, but there was mild increased signal intensity in the muscle that could be related to the prior surgery or mild residual myositis.[4] (Tr. 213).

On June 8, 2005, Puryear completed a Texas Department of Human Services (DHS) Medical Release/Physician's Statement form. (Tr. 204). Puryear indicated that Price was permanently disabled due to degenerative disc disease, diabetes, hypertension, and hyperlipidemia.[5]. Puryear limited Price to sitting for six hours per day, and limited Price to standing, walking, and bending/stooping for no more than two hours per day for each activity. (Tr. 204). Puryear also opined that Price could not be expected to participate in activities performed in an office environment even if it would require little physical strain or demand. (Tr. 204). Puryear ordered a lumbar MRI scan in August 2005, which revealed Grade 1 anterolisthesis[6] at lumbar level L4-5 and a moderate-sized annular disc bulge at L4-5 causing severe narrowing of the right L4-5 neural foramen and moderate narrowing of the left L4-5 neural foramen. (Tr. 221-222).

In April 2006, Puryear referred Price to cardiologist Giri Mundluru, M.D., for evaluation of Price's reports of chest pain, shortness of breath, and rapid heart beat coupled with a history of

---

[4] Myositis is the inflammation of a voluntary muscle. *Id*. at 1244.

[5] Hyperlipidemia is a general term for elevated concentrations of lipids in the plasma. *Id*. at 903.

[6] Anterolisthesis is another term for spondylolisthesis, which refers to the forward displacement of one vertebra over another. *Id*. at 99, 1779.

hypertension. (Tr. 302). Mundluru ordered a new echocardiogram, which confirmed global hypokinesis and a dilated left ventricle with severely reduced systolic function and an ejection fraction of 25%. Mundluru noted that it had been a "technically difficult study." (Tr. 302). No cardiac symptoms were recorded during a 24-hour Holter monitor study.[7] (Tr. 301).

Puryear completed a Multiple Impairment Questionnaire dated June 6, 2006, which was admitted as an exhibit at the hearing that same day and included more significant functional limitations then previously assessed. (Tr. 303, 334). Puryear noted that he saw Price on a monthly basis to care for his diabetes, diabetic neuropathy,[8] hyperlipidemia, and arthritis. Puryear anticipated a progressive decline in Price's diabetes with ultimate kidney compromise. He indicated that Price suffered from daily and constant knee pain and neuropathic pain as a result of diabetes, which was precipitated by excessive walking or standing. (Tr. 304-05). Puryear estimated that Price could sit for three hours in an eight-hour day, and could stand or walk for one hour per day. (Tr. 305). Puryear opined that Price should not sit continuously, but would need to get up and move around approximately every thirty minutes. Price was considered capable of lifting up to twenty pounds occasionally. Price had no particular limitations in reaching, handling, or fingering, but Puryear opined that he should not bend or stoop. (Tr. 309). Medications, exercises, and limitations on activity were used to treat Price's symptoms, and Puryear opined that Price's symptoms would likely increase if he were placed in a competitive work environment. (Tr. 307). In addition, Puryear

---

[7] A Holter monitor is a type of ambulatory electrocardiograph (ECG) recorder. *Id.* at 1194.

[8] Diabetic neuropathy involves functional disturbance or pathological change in the peripheral nervous system. *Id.* at 1287.

opined that Price would need unscheduled work breaks every thirty minutes to an hour, and he could be expected to miss work more than three times a month. (Tr. 309).

    2.    Administrative Hearing

Price testified that he was born August 2, 1959. (Tr. 335). He had no high school diploma, but took an entrance examination and attended college for two years. (Tr. 334-35). He most recently worked in May 2004 as a courier, but had not returned to work after the extended hospital stay to treat his infection. (Tr. 336-37).

Price estimated that he could walk approximately one mile before he needed to sit down, and his doctors encouraged exercise to strengthen his weak leg. (Tr. 338-39). Standing became painful after ten minutes. Price used pain relievers and would sit or lie down to relieve the pain, but sometimes sitting was painful as well. Price also testified that his diabetes sometimes made him feel nauseous or weak and diabetes had caused pain and circulation problems in his feet. (Tr. 341).

Vocational expert Shelly Eike testified that Price's previous job as a courier was unskilled work requiring light exertion. (Tr. 346). The ALJ then asked the vocational expert to consider suitable work for a person of Price's age, education, and work history who was limited to sedentary work. Eike testified that there would be unskilled, sedentary work, including assembly jobs (with 5,600 jobs in Texas and 56,000 jobs nationally); small item inspectors (with 3,400 jobs in Texas and 40,000 jobs nationally); and food order clerks (with 1,500 jobs in Texas and 27,000 jobs nationally).

3. ALJ Decision

The ALJ found that Price had not engaged in substantial gainful activity since May 27, 2004, and that Price had the following severe impairments: diabetes mellitus, degenerative disc disease, and hypertension/cardiovascular disease. The ALJ found no impairment or combination of impairments meeting or equaling a listed impairment. In evaluating Price's residual functional capacity, the ALJ found Price was capable of performing a full range of sedentary work. (Tr. 18-21). Although Price would be unable to return to his previous work as a courier, the ALJ accepted the vocational expert's testimony about other work available for a person of Price's age, education, work history, and residual functional capacity. (Tr. 21-22). The ALJ concluded that Price was not disabled and was not entitled to disability insurance or SSI benefits. (Tr. 22).

D. DISCUSSION

Price does not contest the ALJ's findings at the first three steps of the sequential evaluation process. Instead, he challenges the ALJ's determination that, despite his severe impairments, he can perform the full range of sedentary work. Price asserts that the ALJ did not consider all of the medical evidence and gave inadequate attention to treating source opinions, namely, Puryear's assessments of Price's impairments and functional ability.

Adjudicators must consider every medical opinion received. SOCIAL SECURITY RULING 96-5p. When a treating physician provides a medical opinion that is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record, it is entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if a treating source opinion is not entitled to controlling weight under the regulations, that does

not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p.

The ALJ can decrease the weight assigned to a medical opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In weighing medical opinions, the ALJ must consider the factors outlined in the administrative regulations, which include: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-5p, 96-2p. The determination of disability always remains the province of the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

Price does not dispute the ALJ's decision not to assign controlling weight to Puryear's opinions, (Pl. Br. 10), but instead argues that the ALJ did not perform the detailed analysis required after he declined to give the opinions controlling weight. Price asserts that a proper application of the factors outlined in the regulations would have resulted in due weight being given to Puryear's opinions and a determination that he could not perform a full range of sedentary work or an eight-hour workday.[9]

---

[9] Price asserts that Puryear's opinions that Price must alternate sitting and standing, cannot stoop or bend, and cannot stand or walk for more than one hour per day are not consistent with the requirements of a full range of sedentary work or sustained full-time employment. In order to perform a full range of sedentary work, an individual

The ALJ asserted in his decision that he had complied with the pertinent regulations and rulings in considering the opinion evidence in the record.[10] (Tr. 19). Accordingly, the court disagrees with Price's opening argument that the ALJ gave no indication that he had considered the appropriate factors or did not acknowledge Section 404.1527 (and corresponding Section 416.927) as the governing standard. (Pl. Br. 12; Pl. Reply Br. 5). The ALJ also summarized Puryear's written assessments from 2005 and 2006, then explained:

> The clinical and diagnostic evidence of record fails to support the severe degree of limitation most recently opined by Dr. Puryear. There is no indication in the record (Dr. Puryear's treatment notes or elsewhere) that the claimant would be unable to perform the exertional demands of a full range of sedentary work. There is no diagnostic evidence of diabetic neuropathy. No EMG or nerve conduction studies have been performed.
>
> I do not have to accept the treating source opinion if it is not well supported by the objective evidence of record and, in this instance, it is not. Therefore, I have given only minimal weight to the opinions expressed by Dr. Puryear.

(Tr. 20-21).

Price contends that the ALJ did not provide good cause for the weight given to Puryear's opinions. Price also contends that there is no firsthand medical evidence to contradict Puryear's opinions and obviate the need for a detailed analysis of those opinions. *See Newton*, 209 F.3d at

---

must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. SOCIAL SECURITY RULING 96-9p. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, or the need to alternate the required sitting of sedentary work by standing or walking periodically cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. *Id*. A complete inability to stoop significantly erodes the occupational base as well, and a finding of disability would usually apply. *Id*. And as Price notes, an inability to perform a combination of sitting and standing or walking for eight hours a day precludes a finding that an individual has the requisite capacity for work on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p.

[10] The ALJ represented that he was following Section 404.1527, Section 416.927, and Social Security Rulings 96-2p, 96-5p, and 96-6p. (Tr. 19).

458. Price complains that Puryear provided the only medical source opinions of record, and in refusing to adopt the opinions, the ALJ assessed a residual functional capacity (RFC) that is improperly based on his own interpretation of raw medical data. Price cites the Fifth Circuit's opinion in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), and related cases, to support his complaint that a medical source statement is required. In *Ripley*, the Fifth Circuit reviewed the ALJ's duty to fully and fairly develop the record and noted that the ALJ should usually request a medical source statement describing the types of work a claimant remains capable of performing. *Id.* at 557. But the Fifth Circuit also noted that the absence of such a statement does not, in and of itself, render the record incomplete. *Id.* Instead, the inquiry focuses on whether substantial evidence nonetheless is present in the existing record. *Id.*

Although the ALJ's decision does not include a rigid application of the multi-factor test for weighing medical opinions, the ALJ recognized the appropriate governing standards and his decision addresses each of the relevant factors in substance. The ALJ appreciated Puryear's role as a treating physician[11] and the span of his treatment history with Price. In considering the supportability of Puryear's opinions, the ALJ explained that he found Puryear's opinions to be inconsistent with the objective record, including Puryear's own reports, which indicated that Price's condition was stable with no record of exacerbations. (Tr. 18).

Price questions the ALJ's reliance on the lack of clinical evidence to support Puryear's opinion that diabetic neuropathy would limit Price's activities. Price asserts that the ALJ's reasoning is deficient because Puryear assessed functional limitations that can also be attributed to

---

[11] No one argues that Puryear is a specialist, and records designate him as a family medicine practitioner.

his back problems and leg weakness from his previous surgeries yet the ALJ ignored both of these sources. The court disagrees with Price's criticism. A review of the record and the ALJ's decision indicates that the ALJ's reliance on a lack of objective clinical confirmation was in direct response to Puryear's emphasis on the existence of diabetic neuropathy as the source of Price's symptoms and limitations. (Tr. 303-05). Puryear's written assessments do not mention Price's history of a thigh infection or any resulting functional limitations; therefore, the ALJ had no reason to address these issues in his consideration of Puryear's opinion. The ALJ acknowledged Price's history of a thigh infection and surgery elsewhere in his decision, and Price does not show that any residual weakness is not accommodated by a sedentary work limitation.

As for Price's back impairment, Puryear noted in 2005 that Price suffered from degenerative disc disease, but assessed sitting, standing, and walking abilities not inconsistent with the demands of sedentary work. In 2006, Puryear alluded to Price's back impairment by referring to a diagnosis of "arthritis" and assessed more severe limitations, but the ALJ relied on a lack of substantiating evidence in Puryear's own treatment notes–a finding that Price does not challenge aside from reciting the sheer number of office visits with Puryear–as a reason to assign minimal weight to Puryear's opinions. (Tr. 18, 20). Moreover, the ALJ did not ignore Price's back impairment or its residual effects. The ALJ recognized that Price's back impairment imposed work-related limitations and discounted the opinions of state agency medical consultants, who had opined that Price was capable of medium exertion, because the lumbar MRI had convinced the ALJ to restrict Price to sedentary activity. (Tr. 19). The ALJ also observed that Price testified that his pain was responsive to medication and he sometimes experienced pain-free periods. (Tr. 19, 339, 343-44). *See Harrell*

*v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)(noting that pain is a disabling condition only when constant, unremitting and wholly unresponsive to therapeutic treatment).

Price further complains that the ALJ summarized the results of the June 2, 2004 echocardiogram, but did not refer to the April 21, 2006 echocardiogram results.[12] The ALJ cannot pick and choose among the evidence, but need not mention each and every piece of evidence in the file so long as he has developed the record fully and fairly and has sufficiently articulated the basis for his decision. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996); *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). Moreover, Price does not explain how this omission was prejudicial to his claim or undermines the ALJ's determination that Price can perform sedentary work.

The ALJ complied with his duty to weigh Puryear's opinions in accordance with the governing criteria, and in light of the evidence as a whole, provided a reasonable explanation and good cause for not assigning significant weight to those opinions. Price has not shown that the ALJ's determination that he can perform the exertional requirements and minimal standing, walking, and stooping expected of sedentary work is unsupported by substantial evidence. Because the Commissioner's determination has the support of substantial evidence and Puryear has not shown that the decision is a product of legal error, the decision should be affirmed.

## RECOMMENDATION

The Commissioner's decision should be affirmed.

---

[12] On October 23, 2006, while his claim was pending before the Appeals Council, Price notified the local Social Security office that he continued to see cardiologist Mundluru and was scheduled for heart surgery, including an angioplasty and placement of stints, on November 1, 2006. (Tr. 330). No reports from Mundluru or other documentation regarding that procedure are in the administrative record.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 25, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 25, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED APRIL 4, 2008.


　/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE